IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                          Criminal No. 3:11cr65

JAMES DANIEL PHILLIP CONLEY,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant James Daniel Phillip Conley's *pro se* Motion for Compassionate Release (the "Motion" or "Motion for Compassionate Release"), (ECF No. 37), and Mr. Conley's counsel's Motion to Withdraw, (ECF No. 45).

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will deny the Motion for Compassionate Release and grant Mr. Conley's counsel's Motion to Withdraw.

## I. Background

### A.    Mr. Conley's Underlying Offense

On November 29, 2010, the United States charged Mr. Conley, by way of a Criminal Complaint, with knowingly and willfully depositing for conveyance in the mail a letter containing a threat to take the life of the President of the United States in violation of 18 U.S.C. § 871(a). (ECF No. 1.)

On March 16, 2011, Mr. Conley pled guilty to a single-count Criminal Information charging him with Making a Threat Against the President of the United States in violation of 18 U.S.C. § 871(a). (ECF No. 16; ECF No. 18.) As part of his plea, Mr. Conley signed a Statement

of Facts describing the conduct underlying his offense, which is summarized below.  (ECF No. 20.)

On April 27, 2010, "a review of PID mail[1] revealed a one-page handwritten letter" sent from Mr. Conley to an address in Washington, D.C.  (ECF No. 20 ¶ 2.)  Mr. Conley's letter "contained profanity[-]laden comments directed at President Barack Obama and the First Family."  (ECF No. 20 ¶ 2.)  The letter also made "threatening statements that the President was unsafe," including that the President's "'end [was] near'" and stating that "the President would die and that [Mr. Conley] would be called heroic for taking him down."  (ECF No. 20 ¶ 2; *see also* ECF No. 46 ¶ 6 (reciting the letter Mr. Conley sent to President Obama).)

On April 28, 2010, during an interview with United States Secret Service Special Agent Michael V. Garcia, Mr. Conley admitted to writing the letter to President Obama.  (ECF No. 20 ¶ 3.)  Mr. Conley also stated that he "was not a violent person, but that he would make an exception for the President," and that the "President needed to get out of the office, even if it was done by killing him."  (ECF No. 20 ¶ 3.)

### B.    Mr. Conley's Sentence

Prior to Mr. Conley's sentencing, the United States Probation Office prepared a Presentence Report ("PSR"), summarizing Mr. Conley's criminal history and personal characteristics.  (ECF No. 46.)  The PSR reported a Total Offense Level of 12 and a Criminal History Category of VI, resulting in an advisory guideline range of 30 to 37 months of incarceration.  (ECF No. 46, at 35.)  On June 9, 2011, United States District Judge Henry E. Hudson sentenced Mr. Conley to 37 months' imprisonment to be followed by three years of supervised release.  (ECF No. 26, at 2–3.)

---

[1] The Statement of Facts does not define the term "PID Mail."

On December 20, 2013, Mr. Conley was released from the custody of the Bureau of Prisons ("BOP") and commenced his three-year term of supervised release. (ECF No. 43, at 1.) On March 4, 2014, Judge Hudson signed a Petition on Supervised Release (the "Petition"), and on June 6, 2014, Judge Hudson signed an Addendum to the Petition (the "Addendum"), charging Mr. Conley with commission of a crime while on supervised release in violation of the mandatory terms of his supervised release. (ECF Nos. 28, 31.) On July 9, 2015, Mr. Conley admitted to the violations alleged in the Petition and the Addendum. (ECF No. 35, at 1.) Judge Hudson subsequently found Mr. Conley in violation of the terms of supervised release, revoked Mr. Conley's supervised release, and sentenced Mr. Conley to 24 months' imprisonment to run consecutive to any term of imprisonment imposed on Mr. Conley by any other court. (ECF No. 35, at 1–2.)

At the time Judge Hudson revoked Mr. Conley's supervised release, Mr. Conley was serving a 10-year and 6-month sentence in the Virginia Department of Corrections ("VDOC"). (ECF No. 43, at 1 n.1.) Mr. Conley's state sentence ended on June 30, 2024, and his 24-month sentence for the violation of the mandatory conditions of his supervised release commenced on July 1, 2024. (ECF No. 43, at 1 n1.)

Mr. Conley is detained in BOP custody at Williamsburg FCI. The BOP projects Mr. Conley's release as June 30, 2026. *See Fed. Inmate Locator,* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 25, 2026).

On September 2, 2025, Mr. Conley filed his *pro se* Motion for Compassionate release,[2]

---

[2] On October 20, 2025, Mr. Conley filed a Letter addressed to Judge Hudson "request[ing]" that Judge Hudson "grant [his] motion for compassionate release." (ECF No. 39, at 1.) The Court will consider the Letter and its attachment, (ECF No. 39-1), as part of Mr. Conley's *pro se* Motion for Compassionate Release.

(ECF No. 37), and a Motion to Appoint Counsel, (ECF No. 38).  On March 24, 2026, Judge

Hudson appointed counsel for Mr. Conley.  (ECF No. 40.)  On April 22, 2026, Mr. Conley's

counsel filed a motion pursuant to *Anders v. California*, 386 U.S. 738 (1967), in which counsel

explained that "after a conscientious examination of the record, there is not a request for relief on

behalf of Mr. Conley that has merit" as a motion for compassionate release.  (ECF No. 45, at 1.)

As a result, Mr. Conley's counsel moved to withdraw her representation.  (ECF No. 45, at 1.)

On March 31, 2026, the United States Probation Office responded in opposition to Mr.

Conley's Motion.  (ECF No. 43.)  The United States has not responded or otherwise taken a

position on the Motion.

## II.  Compassionate Release Under the First Step Act

### A.    Legal Standard

Congress authorized "compassionate release" in 18 U.S.C. § 3582(c)(1)(A).[3]  *United*

*States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025).  18 U.S.C. § 3582(c) recognizes the

---

[3] 18 U.S.C. § 3582(c)(1)(A) provides:

(c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case–

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that–

(i) extraordinary and compelling reasons warrant such a reduction; or

4

"general rule" that a court cannot modify a sentence once it has been imposed. *Burleigh*, 145 F.4th at 547. But 18 U.S.C. § 3582(c)(1)(A) contains "an exception to that rule, in which courts may consider motions made by defendants who have exhausted their administrative remedies and are seeking a sentence modification." *Id.*

A court can grant a compassionate release motion if it finds that:

(1) "extraordinary and compelling reasons warrant such a reduction,"

(2) "such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission," and

(3) the 18 U.S.C. § 3553(a) factors weigh in favor of granting relief, to the extent that they are applicable.

*Burleigh*, 145 F.4th at 547 (citing 18 U.S.C. § 3582(c)(1)).

The defendant bears the burden to prove that extraordinary and compelling reasons exist for release under § 3582(c)(1)(A). *See United States v. Wesley*, No. 1:97-cr-382-2 (JKW), 2025 WL 2623449, at *2 (E.D. Va. Sept. 11, 2025) (citing *United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022)).s

### 1. Elements 1 and 2: Extraordinary and Compelling Reasons For a Reduction and the Sentencing Commission's Policy Statement

"Elements one and two are supposed to work together." *Burleigh*, 145 F.4th at 547–48.

---

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

5

"Because [§] 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release, the 'Sentencing Commission, pursuant to authority granted it by Congress,' does so instead." *Id.* (quoting *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), *abrogated on other grounds by Rutherford v. United States*, 608 U.S.—, 2026 WL 1485535 (2026)).[4]

### a.    <u>The Sentencing Commission's Policy Statement</u>

The United States Sentencing Commission issued a policy statement governing extraordinary and compelling reasons that justify compassionate release. *See* U.S.S.G. § 1B1.13(b). It identifies six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction. These include:

(1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated;

(2) the defendant's age;

(3) the defendant's family circumstances;

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer;

(5) "any other circumstances or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)"; and

(6) the defendant's receipt of an "unusually long sentence."

U.S.S.G. § 1B1.13(b)(1)–(6).[5]

---

[4] The United States Supreme Court recently abrogated the United States Court of Appeals for the Fourth Circuit's decision in *McCoy*. *See Rutherford v. United States*, 608 U.S.—, 2026 WL 1485535 (2026). The Court cites *McCoy* solely for its careful description of the process underlying a motion for compassionate release, *not* for any of *McCoy's* substantive determinations.

[5] *See* Appendix A, U.S.S.G § 1B1.13(b) (2025).

### b.    Other Extraordinary and Compelling Circumstances

Until recently, in considering whether "extraordinary and compelling reasons warrant . . . a reduction," 18 U.S.C. § 3582(c)(1)(A)(i), district courts within the jurisdiction of the United States Court of Appeals for the Fourth Circuit were "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise," *McCoy*, 981 F.3d at 284 (quotation omitted), *abrogated on other grounds by Rutherford v. United States*, 608 U.S.—, 2026 WL 1485535 (2026); *see also United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) *abrogated on other grounds by Rutherford*, 2026 WL 1485535 (relying on *McCoy* and reiterating that "district courts [can] consider any extraordinary and compelling reasons for release raised by a defendant").  The United States Court of Appeals for the Fourth Circuit explained that "there is no exhaustive list as to what may be considered extraordinary and compelling, and it is well within [a] district court's discretion to find other reasons"—that is, reasons other than those enumerated in the Sentencing Commission's policy statement— "constitut[ing] an extraordinary and compelling factor that weigh[s] in favor of granting relief." *United States v. Johnson*, 143 F.4th 212, 216 (4th Cir. 2025) (upholding district court's grant of compassionate release where "the district court found the sentencing disparities" between the defendant and his coconspirators "constituted an extraordinary and compelling reason to grant compassionate release").

The United States Supreme Court recently cabined that discretion.  "While the terms 'extraordinary' and 'compelling' leave room for judgment, they are not so flexible as to encompass *any consideration*." *Rutherford*, 2026 WL 1485535, at *8 (emphasis added).  The Supreme Court has explained that at least two circumstances are neither extraordinary nor compelling:  (1) challenges to the validity of an individual's conviction and (2) sentencing

disparities created by nonretroactive changes to sentencing law. *See Fernandez v. United States*, 608 U.S.—, 2026 WL 1485476, at \*10 (2026); *Rutherford*, 2026 WL 1485535, at \*8.

The Supreme Court explained in *Rutherford* that "the heartland of compassionate release . . . has long been defined by a prisoner's personal circumstances," such as a prisoner's illness or family considerations. *Rutherford*, 2026 WL 1485535, at \*7. And a prisoner's showing of even these "personal circumstances" requires meeting a "demanding standard." *Fernandez*, 2026 WL 1485476, at \*7. To be sure, the Supreme Court has expressly refused to decide "whether there are reasons beyond personal circumstances that could qualify as 'extraordinary and compelling'" or whether other "kinds of postjudgment developments" may satisfy the standards of compassionate release. *Rutherford*, 2026 WL 1485535, at \*8 & n.6. But the Supreme Court has made clear that neither § 3582 nor the Sentencing Commission's policy statement grant district courts limitless discretion to define "extraordinary and compelling circumstances."

If extraordinary and compelling circumstances exist, the Court "must then consider whether the factors in § 3553(a) support such a decrease." *Burleigh*, 145 F.4th at 548.

### 2. Element 3: The Statutory Sentencing Factors Enumerated in 18 U.S.C. § 3553(a)

"The § 3553(a) factors include 'the nature and circumstances of the offense' as well as the defendant's history and characteristics, the 'kinds of sentences available,' and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Burleigh*, 145 F.4th at 548 (quoting § 3553(a)(1), (3), (6)). "They also include the need for the sentence 'to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense,' to deter criminal conduct, to

8

protect the public and to provide the defendant with appropriate resources such as 'medical care' and 'vocational training.'" *Id.* (quoting § 3553(a)(2)).

District courts enjoy "'broad discretion'" in analyzing the § 3553(a) factors when considering a motion for compassionate release. *Id.* (quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022)). And "district courts are only required to address the § 3553(a) factors 'to the extent that they are applicable.'" *Id.* (quoting § 3553(a)).

### C.      Exhaustion of Administrative Remedies

A defendant seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. To do so, the defendant must first apply to the BOP to bring a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). After making the request to BOP, a defendant can proceed to district court under the earlier of one of "two routes." *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022) (quotation omitted).

Under the first route, a defendant may file a motion for compassionate release in a district court "after [he or she] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his or her] behalf." 18 U.S.C. § 3582(c)(1)(A). That is, the defendant must exhaust his or her administrative remedies with the BOP. *Ferguson*, 55 F.4th at 268. The second route permits a defendant to "proceed directly to district court," *McCoy*, 981 F.3d at 283, *abrogated on other grounds by Rutherford v. United States*, 608 U.S.—, 2026 WL 1485535 (2026), if the BOP does not act on the defendant's request within "30 days from the receipt of such a request by the warden," 18 U.S.C. § 3582(c)(1)(A); *see also McCoy*, 981 F.3d at 283 ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her]

request is not acted on within that time."), *abrogated on other grounds by Rutherford v. United States*, 608 U.S.—, 2026 WL 1485535 (2026).

A court may waive the exhaustion requirement in certain circumstances, including where pursuing exhaustion would be futile, result in inadequate relief, or subject the defendant to undue prejudice. *United States v. Evans*, 504 F. Supp. 3d 519, 525 (E.D. Va. 2020). In addition, because the exhaustion requirement is "non-jurisdictional," it is "waived if . . . not timely raised" by the United States. *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

### III.  Analysis

Mr. Conley argues that the Court should reduce his sentence for three reasons:  (1) he suffers from a serious medical condition that substantially diminishes his ability to provide self-care in the environment of a correctional facility or requires long-term or specialized medical care that the BOP is not providing; (2) he was a victim of sexual abuse while serving the instant sentence; and, (3) the combination of his circumstances, when considered together, amount to an extraordinary or compelling reason for release. (ECF No. 37, 4–5.)

The United States has not responded to Mr. Conley's Motion.  However, Mr. Conley's counsel moves to withdraw as his representative after determining that Mr. Conley's Motion lacks a meritorious ground for relief. (ECF No. 45.)

For the reasons articulated below, the Court will deny the Motion for Compassionate Release, (ECF No. 37), and grant the Motion to withdraw, (ECF No. 45).  The Court concludes that neither Mr. Conley's medical circumstances, his allegations that he was a victim of abuse, nor his circumstances considered in combination constitute an extraordinary and compelling reason for release.  Accordingly, the Court concludes that Mr. Conley does not offer any

10

extraordinary and compelling reasons to support his request for release. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Even if he had done so, the § 3553(a) factors weigh against his release.

### A.      The Court Will Grant Mr. Conley's Counsel's Motion to Withdraw

Mr. Conley's counsel moves to withdraw based on her determination that, after a conscientious review of Mr. Conley's case and speaking with Mr. Conley about his Motion, his request for relief lacks merit. (ECF No. 45, at 1, 3–4.)  Mr. Conley's counsel explains that since filing his *pro se* Motion, "Mr. Conley has been moved to a BOP facility, FCI Williamsburg, that is more appropriately treating, medicating, and monitoring his physical and mental health conditions." (ECF No. 45, at 3.)  At FCI Williamsburg, Mr. Conley is "classified on the second lowest level for both his physical and mental health conditions . . . which indicates that all of his medical conditions are stable, and he is being treated and receiving his medication for [his] diagnos[e]s." (ECF No. 45, at 3–4.)

Following counsel's conscientious review of Mr. Conley's case and her representations in the Motion, the Court will grant Mr. Conley's counsel's Motion to Withdraw.  (ECF No. 45.)

### B.      Mr. Conley has Exhausted his Administrative Remedies

Mr. Conley states that he submitted a request for compassionate release to the warden on May 20, 2025, which the warden denied on June 20, 2025, thereby satisfying the requirement that Mr. Conley exhaust his administrative remedies. (ECF No. 37, at 3.)  Because the United States did not respond to Mr. Conley's Motion, it waived any argument that Mr. Conley's Motion for Compassionate Release is barred on this ground. *Muhammad*, 16 F.4th at 129–30. And, in any event, the Court would waive the exhaustion requirement because requiring exhaustion given Mr. Conley's upcoming release would result in inadequate relief or otherwise

prejudice Mr. Conley. *See Evans*, 504 F. Supp. 3d at 525. The Court therefore proceeds to consider the merits of Mr. Conley's Motion for Compassionate Release.[6]

### C.    Elements 1 and 2:  The Motion for Compassionate Release Does Not Establish Extraordinary and Compelling Reasons for Mr. Conley's Release

Mr. Conley argues that extraordinary and compelling circumstances exist for three reasons:  (1) his medical circumstances, including his diagnoses of Bipolar I and Unspecified Borderline Personality Disorder, diminish his ability to care for himself and require long-term or specialized medical care that he was not provided, (ECF No. 37, at 4–6); (2) he was the victim of physical or sexual abuse during his incarceration, (ECF No. 37, at 5); and, (3) when considered together, the combination of his circumstances is "similar in gravity" to other bases for compassionate release enumerated in the Sentencing Commission's policy statement, (ECF No. 37, at 5). The Court addresses each argument in seriatim, concluding that none of these circumstances constitute an extraordinary and compelling reason for release.

### 1.    Mr. Conley's Medical Circumstances Do Not Amount to An Extraordinary and Compelling Reason for Release

A defendant's medical circumstances may amount to an extraordinary or compelling reason to grant compassionate release. *See* U.S.S.G. § 1B1.13(b)(1). Specifically, and most relevant here, a defendant's medical circumstances rise to an extraordinary or compelling circumstance where the defendant "is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the

---

[6] The Probation Office states that "[a]ccording to information received from the BOP, there is no record of [Mr. Conley] submitting a request for compassionate release." (ECF No. 43, at 3.) Because, as stated above, Mr. Conley represents that he submitted a request with the BOP, the United States does not contend otherwise, and declining to consider Mr. Conley's motion would result in inadequate relief or otherwise prejudice Mr. Conley, the Court considers the merits of the Motion.

environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13(b)(1)(B)(i), or where the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," *id.* § 1B1.13(b)(1)(C).

Mr. Conley argues that his medical circumstances amount to an extraordinary and compelling reason to grant his release. Specifically, Mr. Conley explains that he was diagnosed with Bipolar I and Unspecified Borderline Personality Disorder while incarcerated in the VDOC, where providers prescribed him several antipsychotic medications. (ECF No. 37, at 6; ECF No. 39, at 1.) Mr. Conley explains that he was "taken off all [of his] meds" upon his transfer to BOP custody and arrival at FCI Jessup.[7] (ECF No. 37, at 6, 7.) Mr. Conley "explained to psychology [at FCI Jessup] that [he] had been in [a] single cell" while at VDOC "due to mental health issues" but was informed that he could not have his own room at FCI Jessup. (ECF No. 37, at 7.) Mr. Conley "was not acclimated to being around people." (ECF No. 37, at 7.) As a result, being "around a lot of people" and "without meds" caused him to "flip[] out." (ECF No. 37, at 7.) Mr. Conley "started self harming," (ECF No. 37, at 7), including by swallowing the contents of an entire bottle of Tylenol and a razor blade,[8] (ECF No. 39, at 2).

Mr. Conley's Bipolar I and Unspecified Borderline Personality Disorder are serious diagnoses that undoubtably require diligent medication management. A refusal or inability of

---

[7] According to counsel's Motion to Withdraw, Mr. Conley was detained at FCI Jessup before being transferred to Williamsburg FCI, where he is presently detained. (*See* ECF No. 45, at 3 & n.1.)

[8] The Probation Office's response corroborates Mr. Conley's claims of self-harm, documenting multiple instances of self-harm between April 2, 2025 and March 30, 2026, including two suicide attempts and several instances of swallowing sharp objects, which resulted in multiple surgeries. (ECF No. 43, at 2–3.)

the BOP to administer Mr. Conley's necessary medication that ultimately resulted in multiple suicide attempts and episodes of self-harm could amount to a medical circumstance justifying compassionate release. *See* U.S.S.G. § 1B1.13(b)(1)(C); *United States v. Siclovan*, 740 F. Supp. 3d 1089, 1097 (D. Or. 2024) (finding that "BOP's failure to provide adequate drug and mental health treatment" amounted to an extraordinary and compelling basis for release).
 However, as counsel explains in the Motion to Withdraw, since Mr. Conley was transferred from FCI Jessup to FCI Williamsburg, the BOP is "more appropriately treating, medicating, and monitoring his physical and mental health conditions." (ECF No. 45, at 3.)  Indeed, his "classification" at the "second lowest level for both his physical and mental health conditions at FCI Williamsburg . . . indicates all of his medical conditions are stable, and he is being treated and receiving his medication for these diagnos[e]s." (ECF No. 45, at 2–3.)  In light of these representations, and given Mr. Conley's improved medical treatment, the Court cannot find that Mr. Conley's Bipolar I and Unspecified Borderline Personality Disorder substantially diminish his ability to provide self-care while incarcerated, or require specialized medical care that he is not receiving at this time.  U.S.S.G. § 1B1.13(b)(1)(B)–(C).

Accordingly, the Court concludes that Mr. Conley's medical circumstances do not constitute an extraordinary and compelling reason to reduce his sentence.

### 2. Mr. Conley's Alleged Abuse Does Not Amount to an Extraordinary and Compelling Reason for Release

A defendant's sexual or physical abuse while in custody can also amount to an extraordinary and compelling reason for release.  U.S.S.G. § 1B1.13(b)(4).  Such a basis for compassionate release exists where:

> The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A) sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

(B) physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

U.S.S.G. § 1B1.13(b)(4).

Here, Mr. Conley selected the box on the *pro se* motion for compassionate release form indicating that he was the victim of either sexual abuse or physical abuse. (ECF No. 37, at 5.) But Mr. Conley offers no details about the nature of the abuse, including the type of abuse (whether sexual or physical), when it was committed and by whom, or whether it resulted in any injuries.[9] Without any elaboration from Mr. Conley about the circumstances surrounding the

---

[9] The Probation Office notes that "on January 12, 2026, [Mr. Conley] underwent an evaluation after reporting that he was sexually assaulted *by his cellmate*." (ECF No. 43, at 2 (emphasis added).) While sexual abuse perpetrated by anyone, including fellow inmates, cannot and should not be tolerated, such abuse does not amount to an extraordinary or compelling reason for compassionate release because it was not perpetrated "by, or at the direction of, a correctional officer, an employee or contractor of the [BOP], or any other individual who had custody or control over [Mr. Conley]." U.S.S.G. § 1B1.13(b)(4). Accordingly, to the extent Mr. Conley's request for compassionate relief as a victim of abuse was based on this incident, such would not amount to an extraordinary or compelling circumstance as contemplated in § 1B1.13(b)(4). *See United States v. Evins*, 3:23-cr-81 (MHL), 2025 WL 87959, at *8 (E.D. Va. Jan. 13, 2025) ("[T]he claims of assault *perpetrated by other inmates* do not rise [to] a finding of extraordinary and compelling circumstances warranting immediate release from confinement.") (emphasis added); *United States v. Shelton*, 3:14-cr-16, 2026 WL 196477, at *6 (W.D. Va. Jan. 26, 2026) (finding that defendant's allegations of sexual abuse against other inmates did not create an extraordinary or compelling reason for release because the defendant made "no showing that the abuse was at the direction of a corrections officer or other employee").

15

abuse, any abuse perpetrated against Mr. Conley does not constitute an extraordinary and compelling reason for relief.

### 3.     The Combination of Mr. Conley's Circumstances Do Not Amount to an Extraordinary and Compelling Basis for Release

Third and finally, Mr. Conley indicates in his *pro se* Motion that his circumstances or the combination of his circumstances, when considered by themselves or together, amount to an extraordinary and compelling basis for release. (ECF No. 37, at 5.) *See* U.S.S.G. § 1B1.13(b)(5) (explaining that "other reasons" may amount to an extraordinary and compelling reason for release when, "considered by themselves or together with any of the reasons described in" the policy statement, the circumstances are similar in gravity to those described in the policy statement). Mr. Conley offers no "other reason" he contends amounts to an extraordinary and compelling reason for reason. Absent such a showing, and because Mr. Conley's Motion offers no independent extraordinary and compelling reason for compassionate release as defined in the policy statement, Mr. Conley's Motion fails to establish that any additional circumstances, or the combination of his circumstances, constitute an extraordinary or compelling reason for release.[10]

---

[10] Mr. Conley makes passing reference to his placement on an "active yard" as a basis for compassionate release. (ECF No. 37, at 7–8.) He explains that because he is a sex offender, he "cannot walk the yard" at his current placement, and that if he is moved to general population he will "possibly [be] killed." (ECF No. 37, at 7–8.)

To the extent Mr. Conley seeks compassionate release from the Court based on his custodial status, his claim would fail because there is no evidence that his safety concerns stemmed from directions or actions by correctional officers to other inmates to harm Mr. Conley. *See* U.S.S.G. § 1B1.13(b)(4) (for abuse to amount to an extraordinary and compelling reason for release, the abuse must be "committed by, or at the direction of, a correctional officer"); *see also United States v. Tate*, No. 3:16-cv-74, 2022 WL 827256, at *2 (W.D.N.C. Mar. 18, 2022) ("An inmate's reasonable fear of assault by other inmates within the BOP is not an extraordinary or compelling reason for compassionate release.").

**D.      Element 3:  The § 3553(a) Factors Do Not Support a Reduction in Mr. Conley's Sentence**

Even if Mr. Conley were to satisfy the requirement for an "extraordinary and compelling" reason for his compassionate release, the § 3553(a) factors weigh against his release.  In the interest of creating a full record, the Court discusses those factors here.

First, the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1), do not support reducing his term of imprisonment.  Mr. Conley's underlying offense of conviction is undoubtably serious, as is the conduct underlying the instant violation.  As to his underlying offense of conviction, Mr. Conley sent a profane letter to the President of the United States threatening to kill him and harm his family.  Regarding the instant violation, Mr. Conley was convicted of robbery and possession of a firearm by a convicted felon in Virginia state court, resulting in a 10 year and 6 month active sentence. (ECF No. 31, at 1.)  This conduct, which occurred while Mr. Conley was on supervised release for the underlying offense in this Court, weighs against release.

Next, Mr. Conley's history and characteristics, § 3553(a)(1), do not support reducing his term of imprisonment.  Mr. Conley has sustained several disciplinary infractions while in BOP custody, including three instances of refusing a work or program assignment and one instance of "self-mutilation and threatening bodily harm." (ECF No 43, at 3 (capitalization omitted).)  Combined with these infractions, Mr. Conley has a substantial criminal history, resulting in his Criminal History Category of VI. (ECF No. 46, at 35.)

The Court must also consider the need for the sentence to protect the public. 18 U.S.C. § 3553(a)(2)(A), (C).  Mr. Conley states that, upon release, he "plan[s] to get a job part time and go to college." (ECF No. 39, at 2.)  He adds that he "ha[s] possible job opp[or]tunities." (ECF No. 39, at 2.)  Despite these general representations, Mr. Conley's proposed release plan

17

provides few details, including where he intends to reside or what his possible job opportunities are. (*See* ECF No. 37, at 10–14 (proposed release plan).) The Court cannot find on the current record that Mr. Conley's release plans would sufficiently protect the public.

The remaining factors, including the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and avoid unwanted sentencing disparities, weigh in Mr. Conley favor. § 3553(a)(2)(A)–(B), (a)(7). Mr. Conley has served nearly all of his sentence. Nevertheless, given the nature and circumstances of the offense and the need to protect the public, the Court will not reduce Mr. Conley's sentence.

On balance, the § 3553(a) factors do not outweigh the continuing need for the sentence imposed to reflect the seriousness of the offense for which he was sentenced. Mr. Conley's 24-month sentence is sufficient but not greater than necessary to reflect the seriousness of his offense. The record before the Court does not justify Mr. Conley's early release from federal imprisonment.

### IV.  Conclusion

For the reasons articulated above, the Court will deny the Motion for Compassionate Release, (ECF No. 37), and grant the Motion to Withdraw, (ECF No. 45).

An appropriate Order shall issue.

Date: 6/25/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

18